Argued September 13, modified and judgment ordered
October 10, 1951

# GREEN *v.* LECKINGTON
### 236 P. 2d 335

*George P. Winslow*, of Tillamook, argued the cause and filed a brief for appellant.

*Warren A. McMinimee*, of Tillamook, argued the cause and filed a brief for respondent.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

## LATOURETTE, J.

This is an appeal by defendant from a judgment of $700 obtained against him by way of damages to the plaintiff occasioned by the death of his dog at the hands of defendant.

It appears that at the time of the canine's demise he was approximately eight months old, having been purchased by plaintiff some two months previously for the sum of $200. The animal was a pedigreed German shepherd. The parties lived in the city of Tillamook,

they were friendly neighbors, and defendant shot the dog on his premises while it was chasing his chickens.

The first assignment of error is directed to the instruction by the trial court to the jury that "the measure of damages is the value of the dog to plaintiff." Under this assignment defendant makes the following point:

"The true measure of damages for the loss of a dog is the reasonable market value of the dog at the time of the loss, and particularly so if the evidence shows there was a market value."

■ There was evidence in the case by a witness called by plaintiff that the reasonable market value of the dog at the time of the killing was $250. Plaintiff himself testified that the dog was worth $1,000 to him. In his brief plaintiff states, "It is submitted this only female of its kind had no market value and plaintiff was entitled to prove its special value to him." Plaintiff's statement, in view of the testimony of his own witness, is rather unique. The true rule on the measure of damages in a case of this kind is found in *McCallister v. Sappingfield,* 72 Or. 422, 427, 144 P. 432, cited by plaintiff in his brief, where the following language is used:

"The true rule being that the owner of a dog wrongfully killed is not circumscribed in his proof to its market value, for, *if it has no market value,* he may prove its special value to him by showing its qualities, characteristics and pedigree, and may offer the opinions of witnesses who are familiar with such qualities." (Italics ours.) See *Barber v. Motor Investment Co.,* 136 Or. 361, 298 P. 216; *Mattechek v. Pugh,* 153 Or. 1, 55 P. (2d) 730.

■ Because plaintiff's evidence disclosed that the dog had a market value (which was uncontradicted),

we hold that the court erred in giving the above instruction.

Assignments of Error Nos. II to VI, inclusive, relate to the giving and failure to give certain instructions relating to the right of defendant to kill the dog in an incorporated city. To properly determine the propriety of the instructions, we must consider ch. 426, Or. Laws, 1941, and amendments to that Act found in ch. 48, Or. Laws, 1945. It is contended by the defendant that the 1945 amendment is unconstitutional. If such amendment is constitutional, the court did not err in giving and refusing to give the instructions involved.

The title of the 1941 Act is as follows:

"Relating to and providing for the protection of livestock and poultry from dogs running at large, and for the recovery of damages to livestock caused by such dogs; providing penalties, and repealing sections 32-2402, 32-2403, 32-2404, 32-2405, 32-2416 and 32-2417, O.C.L.A.";

and following is § 3 thereof:

"Any dog, whether licensed or not, which, while off the premises owned or under control of its owner, shall kill, wound or injure any livestock not belonging to the master of such dog, shall be deemed to be a public nuisance and may be killed forthwith by any person; provided, that nothing contained herein shall apply to any dog acting under the direction of its master, or the agents or employes of such master; provided further, that if any dog, not under the control of its owner or keeper, be found chasing livestock not the property of such owner or keeper it shall be deemed, prima facie, as engaged in killing, wounding or injuring livestock, as the case may be."

The title of the amendatory Act of 1945 is "To amend sections 1, 3 and 4, chapter 426, Oregon Laws,

1941, relating to livestock.'' Section 3 of the original act, the one involved in this appeal, was amended by the 1945 Act by adding to the section the following language:

"* * * provided also, that no person shall be authorized to kill any dog for killing, wounding, injuring or chasing chickens upon a public place or highway or within the corporate limits of any incorporated city.''

It is contended by defendant that:

"The title to both of these acts relate[s] only to *the protection of livestock and poultry.*

"It should be kept in mind that livestock has never been defined to include dogs. The title does not refer to the protection of dogs. It is clear that the legislature was not intending to pro[t]ect dogs when the 1941 law was enacted. On the contrary the title to the 1941 law expressly states that the subject of the act was '*for the protection of livestock and poultry from dogs running at large,* * * *'

"In the enactment of Chapter 48, General Laws 1945, no attempt was made to amend the title of the original act. *Therefore, unless the title to the 1941 enactment was sufficient to include the subject of protecting dogs* to such an extent as to abridge and abrogate the common law rule giving a person the right to kill a trespassing dog when it appeared reasonably necessary to protect his property, it is invalid and unconstitutional. (Italics ours.)

"Article IV, Section 20 of the Oregon Constitution provides:

"'Every act shall embrace but one subject, and matters properly connected therewith, WHICH SUBJECT SHALL BE EXPRESSED IN THE TITLE.' ''

■ The clause, "relating to livestock,'' found in the title of the 1945 Act neither adds nor detracts from the

previous portion of the title, "To amend Sections 1, 3 and 4, chapter 426, Oregon Laws, 1941." The 1941 Act relates to livestock, and the clause, "relating to livestock," is mere surplusage.

■■ Much has been written by our court on § 20, Article IV, of the Oregon constitution. It will be unnecessary for us to cite all of the authorities relating to this matter, since this court has, in many cases, laid down the rule that, if a provision in an amendatory act is within the scope, and germane to the subject expressed in the title, of the act amended and has a natural connection with the general subject of the act and could have been included in the original act and under the original title thereto, it is permissible and conforms to the constitution. In treating this matter, we must also adhere to the rule that every legislative act is presumed to be constitutional and should receive a liberal construction so that the legislative intent may be sustained.

■ There is another rule that where the legislature makes a title to an act restrictive, it may not include in the body of the act matters which enlarge the scope of the title, nor can an amendment be enacted by reference to the previous act enlarging the scope of the title.

A very complete and exhaustive opinion on this subject was written by Mr. Chief Justice BRAND and may be found in *In re Trader's Guardianship,* 191 Or. 203, 229 P. 2d 276. See also *State v. Perry,* 77 Or. 453, 151 P. 655; *State ex rel. v. Latourette,* 168 Or. 584, 593, 125 P. 2d 750.

We are then brought down to the proposition: Is the clause, "provided also, that no person shall be authorized to kill any dog for killing, wounding, injuring or chasing chickens upon a public place or highway or within the corporate limits of any incorporated

city,'' found in the 1945 amendment, germane to the subject expressed in the title of the 1941 Act?

■ The title of the 1941 Act relates to and provides for the protection of livestock and poultry from dogs running at large, and it is our opinion that the 1945 amendment is germane to the subject expressed in the title of the 1941 Act, and that the legislature at that time could have properly included in the body of the Act the limitation placed in the 1945 Act that ''no person shall be authorized to kill any dog * * * within the corporate limits of any incorporated city.'' In § 3 of the 1941 Act a limitation was placed on the killing of dogs while ''acting under the direction of its master or the agents or employes of such master,'' and, likewise, a limitation on the killing of dogs in an incorporated city could have been inserted in the Act of 1941, and this is so because the title of the 1941 Act is not a restrictive but a broad title covering dogs running at large throughout the state. There is nothing in our decisions restricting the legislature from passing laws that narrow the legislation under a broad and general title, but where the title is restrictive, such as in the Perry and Latourette cases, supra, the legislature cannot, in the body of the act or by amendment, enlarge the scope of the title, and this is true even though it be germane to the title of the act.

■ The whole, of course, includes its parts, and where the legislature in the title of the 1941 Act employed the language, ''running at large,'' that language was broad and all-inclusive in respect to the territory it covered; therefore, later in 1945 when it confined the killing of dogs to outside of incorporated cities, it acted within its constitutional powers; in other words, the dog wags the tail and not the tail the dog.

■ Much is said in defendant's brief about an owner of livestock having a common-law right to kill a dog running at large in the protection of his livestock. This, in our opinion, is beside the point because the legislature has the right to abrogate the common law if it sees fit.

The court, therefore, did not err as contended for in Assignments of Error Nos. II to VI, inclusive.

■ Assignments of Error Nos. VII and VIII are directed to the court's giving and refusing to give instructions on the question of exemplary and punitive damages. The court instructed the jury that it could award punitive damages if the defendant acted maliciously, etc. There was no evidence of malice or guilty intent warranting such an instruction, defendant having acted in good faith in the protection of his chickens. He was on goods terms with plaintiff, and the evidence is uncontradicted that he did not know the dog belonged to plaintiff. There was an intent to kill the dog but no intent to injure plaintiff.

■ Plaintiff has cited a number of cases from other jurisdictions touching on exemplary damages, but they have no application in Oregon. We have laid down the rule that to be entitled to exemplary damages, plaintiff must show malice or guilty intent on the part of defendant or other circumstances of aggravation, and, if he acted in good faith, exemplary damages are not recoverable. *Martin v. Cambas,* 134 Or. 257, 261, 293 P. 601; *Van Lom v. Schneiderman,* 187 Or. 89, 210 P. 2d 461, 11 A.L.R. 2d 1195. In the Martin case, the police violated the law in arresting the plaintiff, yet, since they acted in good faith, they were not subjected to exemplary damages.

■ The court erred in its instructions on exemplary damages, and, since the verdict was not segregated, being a general verdict for $700, we have no way of determining the basis for the jury's verdict. Since defendant killed the dog in an incorporated city in violation of law, under the state of the record he would be liable for damages to the plaintiff for the market value of the dog, so that on a retrial the value of the dog would be the sole issue for the jury to try.

■ Ordinarily, on account of the error in the case, it would be sent back for retrial, but we believe that, since we have the entire record before us, including the evidence adduced at the trial, in the interest of harmony between neighbors, we should, under § 3, Article VII, of the Oregon constitution, as amended in 1910, examine the case on the facts, and enter such judgment as seems equitable under the circumstances.

The evidence discloses that plaintiff purchased the dog for $200 and had owned her for a period of two months up to the time of the dog's death. Plaintiff's witness, from whom plaintiff purchased the dog, testified that the market value of the dog at the time of her death was $250. We believe this sum would be just compensation to the plaintiff for the loss of his dog. Because of this, we set aside the judgment below and direct that a judgment be entered in favor of plaintiff and against defendant for the sum of $250 and costs in the court below; costs to be recovered in this court by defendant.