# WILLIAMS,
## *Respondent,*
### *v.*
# SPINOLA,
## *Appellant.*

## (No. 111,184, CA 15955)

622 P2d 322

Jossi Davidson, Silverton, argued the cause and filed the briefs for appellant.

Dean T. Zografos, Salem, argued the cause for respondent. With him on the brief was Williams & Zografos, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals from a judgment entered on a jury verdict awarding plaintiff $3,600 in compensatory and $4,000 in punitive damages for the unlawful killing of plaintiff's dogs. Defendant contends that the trial court erred (1) in denying her motions for judgment of involuntary nonsuit, directed verdict and judgment notwithstanding the verdict, all on the ground that plaintiff failed to prove that the person who killed plaintiff's dogs was defendant's agent; (2) in failing to give certain jury instructions requested by defendant; and (3) in denying defendant's motion to strike the issue of punitive damages.[1] We affirm in part and reverse in part.

Defendant owns and lives on a 20 acre farm near Scotts Mills where she raises sheep. At the time of the incident, defendant had a tenant in another house on the property, a Mr. Guillen. Defendant's mother also lived on the farm in a mobile home. In the two-week period leading up to the killing of plaintiff's dogs, sheep had been killed by dogs in and around Scotts Mills, and defendant herself had experienced trouble with dogs molesting her sheep.

Around 11:15 p.m. on November 29, 1977, defendant was awakened by barking dogs in her pasture. She dressed, picked up a flashlight and went to get her tenant, Guillen, to help her investigate. Roughly half-way to his house, she met Guillen, who had apparently also been awakened by the dogs. Defendant was unarmed but Guillen was carrying a .22 caliber semi-automatic rifle. At some point on their way down to defendant's lower pasture, Guillen took the flashlight from defendant and she followed. As they approached the fence between defendant's upper and lower pastures, they were met by several sheep running away from where the dogs were barking. At the time, defendant knew the gate between the pastures was closed; however, there was a hole in the fence and she was unsure whether her sheep were in the lower pasture. In

---

[1] Defendant also contends that her motion for directed verdict should have been granted on the basis of her counterclaim for trespass. That theory was not, however, argued at trial; therefore, we do not consider it. *Blue Ribbon Bldgs. v. Struthers,* 276 Or 1199, 557 P2d 1350 (1976).

addition, according to her, the sheep habitually got through the fence dividing the two pastures.

As Guillen shined the light around, according to defendant, she saw the reflection of a pair of eyes and a white shape which she believed to be a dog coming up the hill to get a sheep. After the shooting it was learned that there were no sheep in the lower pasture. The pair of eyes and white shape seen by defendant were plaintiff's dogs, which he claimed had been trained to hunt raccoons, hunting on defendant's farm without her permission. It was subsequently determined that the dogs had treed a raccoon in the lower pasture, but it is disputed as to when defendant became aware of that fact.

Roughly five minutes after the shooting, plaintiff appeared at defendant's door. The facts are controverted as to who actually shot the dogs and what was said between plaintiff and defendant at that time. Defendant testified that at about the same time she saw the pair of eyes and the white shape Guillen fired four shots in rapid succession. Defendant's mother testified, without objection, that Guillen told her that defendant had shot the dogs. Finally, plaintiff testified that when he asked defendant if she had seen his dogs, defendant replied, "I shot both of them" and "there's one happy 'coon down there." Defendant testified that she said "Sal shot your dogs, I'm sorry," and later said, "If there was a raccoon out there, he's the only happy one tonight." Defendant's mother also testified that defendant was remorseful, but might have said "there's one happy 'coon down there."

■ Defendant's first and third assignments of error raise the question of whether there was sufficient evidence of any agency between defendant and Guillen, who defendant contends did the shooting. The first assignment is with respect to the motion for nonsuit, and the third is with respect to the motion for directed verdict. Both were properly denied on the ground argued, because there was sufficient evidence adduced in plaintiff's case-in-chief to permit the jury to find that defendant, not Guillen, shot the dogs.

■ Defendant next contends that the trial court erred in failing to give three requested instructions which, she

contends, would have permitted the jury to find that she was privileged to kill the dogs if she reasonably believed they were chasing her sheep. We do not read her requested instructions that way; the closest any one of them came to that theory was defendant's requested instruction number four, which was:

"Defendant's right to kill the dogs in protecting her property or in abating the nuisance is a right to act reasonably. The question of reasonableness must be determined in light of all the circumstances which existed at the time and place in question."

The trial court gave the following instruction:

"Under the laws of the State of Oregon as they pertain to this case a person has an absolute right to shoot a dog only under certain circumstances and, one, the dog must not be acting under the control of its master and, two, the dog must be found to have killed, wounded or injured livestock or be in the act of chasing such livestock. If you therefore find that the dogs in question were not under the control of their master or were in the act of killing, wounding, injuring or chasing livestock then you shall find that the defendant had an absolute right or privilege to shoot the dogs. However, if you find that the dogs were in the control of plaintiff or not in the act of killing, wounding, injuring or chasing livestock then the defendant has no absolute right or privilege to shoot the dogs.

"The law permits a person to kill a dog in defense of her property; however, in order to justify such a killing a person must exercise reasonable and prudent judgment when determining whether circumstances exist which create a necessity for such killing. The question of reasonableness must be determined in light of all the circumstances which existed at the time and place in question."

That instruction substantially incorporates defendant's requested instruction number four. We find no error.

■■ Finally, defendant contends that there was insufficient evidence to submit the issue of punitive damages to the jury. We agree. It is undisputed that plaintiff's dogs were on defendant's property in the middle of the night without her consent. They were barking and defendant's sheep were running from the area from which the barking came. The only evidence which might arguably suggest that defendant's act was malicious is the alleged statement

by defendant to plaintiff sometime after the incident, "There's one happy 'coon down there," coupled with a smiling countenance. It is argued that evidence of the disputed statement was sufficient to permit the jury to infer that defendant knew that the dogs had treed a raccoon and were not bothering defendant's sheep at the time of the shooting. We agree that the first inference is permissible; however, the second is not. We do not consider that punitive damages would serve their intended function under the circumstances here presented. We said in *Senn v. Bunick,* 40 Or App 33, 41, 594 P2d 837, *rev den* 287 Or 149 (1979):

> "More succinctly, it has been stated that 'it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard' of the rights of others and 'where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent * * *.' *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967), 27 ALR3d 1268 (1969). The impact of punitive damages is supposed to be a 'civilizing influence.' *Douglas v. Humble Oil,* [251 Or 310, 445 P2d 590 (1968)], 251 Or at 316."

Here, even if defendant was not privileged to shoot the dogs because they were not actually chasing her sheep, plaintiff had let the dogs out of his car to hunt raccoons, and they were on defendant's property without her consent and, at the least, were disturbing her sheep. We cannot say that where, as here, the plaintiff has disregarded defendant's rights, defendant's conduct was such a violation of societal interests that punitive sanctions, over and above compensatory damages, would tend to prevent such conduct in the future.

We conclude that under the particular circumstances of this case punitive damages should not have been submitted to the jury. It follows that the judgment for punitive damages is reversed.

Affirmed in part, reversed in part, and remanded for entry of a new judgment omitting punitive damages.