**Fred RICHARDSON and Jill Richardson, Appellants,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Appellee.**

No. S–391.

Supreme Court of Alaska.

Aug. 30, 1985.

---

Thomas R. Wickwire, Fairbanks, for appellants.

Chris Bataille, Asst. Borough Atty., Michael B. Markham, Acting Borough Atty., for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case concerns the proper measure of damages for the death of a pet dog caused by a municipality's negligence. The Fairbanks North Star Borough Animal Shelter (hereafter Borough or pound) violated a Borough ordinance and mistakenly killed the Richardsons' pet dog, Wizzard. The Richardsons had owned the dog for about two months. At trial the superior court limited the damage award to the dog's market value or replacement cost. The Rich-

ardsons appeal the measure of damages applied by the court. We affirm.

## I. FACTS AND PROCEEDINGS

After an unsuccessful search for their missing dog, the Richardsons called the pound. A pound employee confirmed that the pound had the dog and informed the Richardsons that they could redeem their dog between 8:00 a.m. and 5:00 p.m. The Richardsons went to the pound after work that day, arriving at 4:50 p.m. Although they could see their dog chained in the back of the pound, the employees refused to let them in because the pound was closed. The following day the Richardsons left work early. When they arrived at the pound, they were told that their dog had been killed. The Richardsons sued the Borough.

Under a Borough ordinance the pound was supposed to keep dogs seventy-two hours before killing them. However, the pound mistakenly killed the Richardsons' dog during its second day of impoundment. The Borough employee in charge of the pound, Robert Spencer, admitted that the Borough violated its own policy by failing to keep accurate records.

In a pretrial ruling, the superior court ruled that since liability was already established, the sole issue was the value of the dog. The court limited the measure of damages to the dog's fair market value or replacement cost. The Richardsons rejected the Borough's $2,000 offer of judgment and went forward with the trial despite its limited scope. After the jury awarded the Richardsons $300, the court awarded the Borough costs and attorney's fees totaling $3,763 pursuant to Civil Rules 68 and 82. The Richardsons appealed.

## II. DISCUSSION

At trial and on appeal the Richardsons raised five issues. They argued that when formulating the damage award the jury should have been allowed to consider (1) Wizzard's value as a pet, (2) their emotional

pain and suffering, (3) punitive damages,[1] (4) whether the Borough's act was an eminent domain taking,[2] and (5) whether they were public interest litigants.[3]

■ The superior court correctly held that the Richardsons' subjective estimation of Wizzard's value as a pet was not a valid basis for compensation. Since dogs have legal status as items of personal property, courts generally limit the damage award in cases in which a dog has been wrongfully killed to the animal's market value at the time of death. *Green v. Leckington,* 192 Or. 601, 236 P.2d 335, 337 (1951). In cases involving working dogs, especially those of mixed lineage without a marketable pedigree, courts have based the damage award on the dog's utility. *See Paguio v. Evening Journal Ass'n.,* 127 N.J.L. 144, 21 A.2d 667, 668 (1941). However, a minority of jurisdictions have recognized that these limited damage awards are not commensurate with the loss suffered by an owner when a pet is maliciously killed. *See La Porte v. Associated Independents, Inc.,* 163 So.2d 267, 269 (Fla.1964).

■ The Richardsons also seek compensation for their mental and emotional suffering. We recognize that the loss of a beloved pet can be especially distressing in egregious situations. Therefore, we are willing to recognize a cause of action for intentional infliction of emotional distress for the intentional or reckless killing of a pet animal in an appropriate case. *See Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (1985) (owners allowed to bring claim for intentional infliction of emotional distress after alleging that defendant negligently or recklessly shot and killed their donkey, causing them to suffer extreme mental anguish and trauma).

■ The Restatement (Second) of Torts, § 46(1) (1965) establishes the elements of a claim of intentional infliction of emotional distress. The offending party, through extreme or outrageous conduct, must intentionally or recklessly cause severe emotional distress or bodily harm to another. We hold that the trial judge should make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim of intentional infliction of emotional distress.[4] The actor's offensive conduct must be very similar to that which would sustain a claim for punitive damages.[5] The judge's threshold determination on these issues will not be overturned absent an abuse of discretion.

■ In this case the Richardsons made an offer of proof regarding their emotional distress. The evidence in the record indicates that the trial judge properly made a threshold determination that the severity of the Richardsons' emotional distress did not warrant a claim of intentional infliction

1. We agree with the majority of jurisdictions that hold that punitive damages cannot be awarded against a municipality without statutory authorization. *See* 18 E. McQuillin, Municipal Corporations, § 53.18a, at 220–21 (3d ed. 1984); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759–2760, 69 L.Ed.2d 616, 632 (1981). This does not preclude the imposition of punitive damages against a private defendant in a similar case. *See Levine v. Knowles,* 197 So.2d 329 (Fla.Dist.App.1967) (owner was entitled to punitive damages if he could establish that despite instructions to hold his dog's body, the veterinarian willfully cremated it to avoid the consequences of autopsy and a probable malpractice claim).

2. This argument is without merit. In mistakenly killing Wizzard, the Borough negligently exercised its police powers. This act did not constitute an eminent domain taking. *See* 1 J. Sack-

man, Nichols' The Law of Eminent Domain, § 1.42[2] (rev. 3d ed. 1981).

3. Policy issues aside, there was sufficient monetary incentive to bring this case. Therefore, the Richardsons were not public interest litigants. They must bear the Borough's costs and attorney's fees as correctly awarded by the trial court pursuant to Civil Rules 82 and 68. *See Kenai Lumber Co., Inc. v. LeResche,* 646 P.2d 215, 222–23 (Alaska 1982).

4. Judges regularly make similar threshold determinations when ruling on the question of punitive damages. *See Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 773–74 (Alaska 1982).

5. *See* Restatement (Second) of Torts, § 46 comment d (1965); *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d at 773–74.

of emotional distress.[6] Therefore, we affirm the lower court's ruling on this issue.

AFFIRMED.

---

**6.** The lower court erred in ruling that the Richardsons were precluded from presenting evidence on their emotional distress *because* they did not provide expert medical testimony to substantiate their claim. Expert medical testimony may be the most effective method of demonstrating the existence of severe emotional distress, but it should not be the exclusive means of ascertaining a party's mental state. The trial court's error was harmless because the severity of the Richardsons' emotional distress did not warrant a claim of intentional infliction of emotional distress.