Jennifer S. MITCHELL, Appellant,

v.

Susan Tuccio HEINRICHS, Appellee.

No. S–8937.

Supreme Court of Alaska.

July 20, 2001.

Thomas R. Wickwire, Fairbanks, for Appellant.

Susan Tuccio Heinrichs, pro se, Fairbanks, Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. *INTRODUCTION*

Susan Heinrichs shot and killed Jennifer Mitchell's dog. Mitchell sued, seeking compensatory damages for the dog's value, as well as damages for her mental anguish and punitive damages. Upon making a threshold determination that Heinrich's conduct was not outrageous, the superior court granted summary judgment to Heinrichs on Mitchell's claims for intentional infliction of emotional distress and punitive damages. The court also limited compensatory damages to the dog's fair market value and then dismissed Mitchell's claim because she conceded that her adult dog had no market value. Mitchell appeals these decisions.

## II. *FACTS AND PROCEEDINGS*

On May 29, 1997, Susan Tuccio Heinrichs noticed two dogs running loose on her property. Heinrichs recognized one of the dogs, a MacKenzie River husky, as a dog that had been on her property repeatedly, without permission, over the previous two months. According to Heinrichs, she had unsuccessfully attempted to find the owner in the past and did not know at that time that Jennifer Mitchell owned the husky.

Heinrichs saw the dogs running near her livestock pen, which contained chickens and goats. One of the goats had just given birth to two kids and it was still bloody from the

birth. Heinrichs perceived that the dogs were excited by the smell of the blood and were threatening her livestock.

Heinrichs grabbed her shotgun, left her house, and walked toward the dogs, which were about twenty-five to thirty feet away. After she walked a few feet, the dogs turned their attention to Heinrichs. Maintaining that she felt threatened for her own personal safety, Heinrichs shot Mitchell's dog. Immediately after the shooting, Heinrichs walked back into the house. Ten to fifteen minutes later, Mitchell discovered her dead pet. She confronted Heinrichs and then removed her dog from Heinrichs's property.

On July 15, 1997, Mitchell filed a complaint against Heinrichs seeking compensatory damages for the loss of her dog, as well as damages for her emotional distress and punitive damages. In October Heinrichs sent a letter to Mitchell, apologizing for the incident and offering $250 so that Mitchell could buy a new dog. Mitchell did not accept the offer.

Heinrichs then moved for summary judgment, seeking to dismiss Mitchell's claims of conversion,[1] intentional infliction of emotional distress, and punitive damages. Superior Court Judge Niesje J. Steinkruger granted summary judgment in favor of Heinrichs on the intentional infliction of emotional distress and punitive damages claims. Judge Steinkruger denied summary judgment on the conversion claim, but limited compensatory damages on that claim to the fair market value of the dog.

Heinrichs filed a second motion for summary judgment, arguing that Mitchell had failed to establish any compensatory damages for loss of the dog. Relying on Mitchell's statement that "the value of her dog, just before the time it was shot, was zero,

because other people are not interested in buying someone else's dog," Heinrichs requested dismissal of Mitchell's conversion claim based on the failure to prove any damages. The superior court granted the motion and dismissed the conversion cause of action "with prejudice upon the merits." On appeal Mitchell challenges each of these determinations.

## III. DISCUSSION

### A. Standard of Review

 This court reviews a trial court's decision granting summary judgment de novo and will affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] The question of whether Mitchell presented sufficient evidence to support a prima facie case for intentional infliction of emotional distress or punitive damages is a threshold question to which this court applies an abuse of discretion standard.[3]

### B. The Superior Court Properly Dismissed Mitchell's Intentional Infliction of Emotional Distress and Punitive Damage Claims.

 In *Richardson v. Fairbanks North Star Borough,* we recognized a cause of action for intentional infliction of emotional distress for the intentional or reckless killing of a pet animal.[4] For such claims, the trial court must "make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim of intentional infliction of emotional distress."[5] The challenged conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to

---

1. The superior court analyzed Mitchell's claim under the rubric of "trespass to chattels." But destruction of chattels, as occurred in this case, rather than mere damage to chattels, gives rise to liability for the tort of conversion. *See McKibben v. Mohawk Oil Co., Ltd.,* 667 P.2d 1223, 1228 (Alaska 1983); Restatement (Second) of Torts § 226 (1965). We herein refer to the tortious killing of a pet animal as conversion.

2. *See Martinson v. ARCO Alaska, Inc.,* 989 P.2d 733, 735 (Alaska 1999).

3. *See Wal–Mart, Inc. v. Stewart,* 990 P.2d 626, 636–37 (Alaska 1999) (punitive damages); *Hawks v. State, Dep't of Pub. Safety,* 908 P.2d 1013, 1015–16 (Alaska 1995) (intentional infliction of emotional distress); *Richardson v. Fairbanks North Star Borough,* 705 P.2d 454, 456 (Alaska 1985).

4. 705 P.2d at 456.

5. *Id.*

be regarded as atrocious, and utterly intolerable in a civilized community." [6]

■ We also recognized in *Richardson* that a plaintiff could recover punitive damages for the killing of a pet.[7] We concluded that the offensive conduct warranting punitive damages is similar to the conduct that would sustain an intentional infliction of emotional distress claim.[8] The plaintiff must produce evidence that the defendant's conduct was outrageous, such as evidence that the acts were performed with malice, bad motive, or reckless indifference to the rights or interests of another.[9] Punitive damage claims also require the trial court to make a threshold determination whether there is "evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice." [10]

Here, the superior court granted summary judgment on Mitchell's claim of intentional infliction of emotional distress, concluding, after considering the evidence in the light most favorable to Mitchell, that Heinrichs's conduct did not go "beyond all bounds of decency." Although the superior court conceded that Heinrichs "might have acted in a less drastic manner to the intruder on her property," it concluded that "the defendant's conduct, even when considered in the light most favorable to the plaintiff, [was] not 'outrageous.'" The superior court also rejected Mitchell's claim for punitive damages, determining that Heinrichs had not acted in a malicious or recklessly indifferent manner.

■ In light of the dog's increasingly bold behavior and the threat to the livestock, the trial court concluded that Heinrichs's shooting of the dog was not an outrageous, malicious, or utterly intolerable act. Oregon courts have denied punitive damages in two cases in which a person shot and killed a dog that was harassing or threatening livestock.[11] Moreover, under the Fairbanks North Star Borough Code of Ordinances, the intentional killing of an animal is justified if the person acted "in reasonable defense of person or property." [12] Because Mitchell presented no material facts to dispute that Heinrichs acted in a manner justified under the community standards embodied in the municipal ordinance, the superior court did not abuse its discretion in making the threshold finding that Heinrichs's conduct did not support a prima facie case of either intentional infliction of emotional distress or punitive damages.

### C. The Trial Court Did Not Err in Concluding that Damages for the Loss of a Pet May Not Include Sentimental Value or Companionship Value.

Mitchell asks this court to revisit its ruling in *Richardson* that the damage award for the loss of a pet is limited to its fair market value.

In *Richardson*, we affirmed a trial judge's determination that the proper measure of damages was limited to the dog's fair market value or replacement cost:

The superior court correctly held that the Richardsons' subjective estimation of [the

6. *Hawks*, 908 P.2d at 1016 (quoting *Oaksmith v. Brusich*, 774 P.2d 191, 200 (Alaska 1989)).

7. 705 P.2d at 456 n. 1.

8. *See id.* at 456.

9. *See Wal–Mart*, 990 P.2d at 636.

10. *Id.* at 637 (quoting *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995)).

11. *See Green v. Leckington*, 192 Or. 601, 236 P.2d 335, 339 (1951); *Williams v. Spinola*, 50 Or.App. 87, 622 P.2d 322, 325 (1981); *see also* Robin Cheryl Miller, Annotation, *Damages for Killing or Injuring Dog*, 61 A.L.R. 5th 635, 703 (1998) (hereinafter Miller).

12. Fairbanks North Star Borough Code of Ordinances 6.24.040(B)(7). *See also* AS 11.61.140 (limiting cruelty to animals misdemeanor to infliction of severe pain or prolonged suffering, failure to care for animals, or killing by use of decompression chamber). In response to a complaint by Mitchell, the Division of Animal Control concluded that "according to our ordinance, [Heinrichs] was within her rights." *See generally* AS 03.55.030 (making it lawful to kill a dog that "habitually annoys" livestock and other animals, provided that the dog owner, "if known or reasonably identifiable," is first notified and given reasonable opportunity to restrain the dog).

dog's] value as a pet was not a valid basis for compensation. Since dogs have legal status as items of personal property, courts generally limit the damage award in cases in which a dog has been wrongfully killed to the animal's market value at the time of death. In cases involving working dogs, especially those of mixed lineage without a marketable pedigree, courts have based the damage award on the dog's utility. However, a minority of jurisdictions have recognized that these limited damage awards are not commensurate with the loss suffered by an owner when a pet is maliciously killed.[13]

In the more recent case of *Landers v. Municipality of Anchorage,*[14] we recognized that the value to the owner, rather than the fair market value, is the proper measure of damages "where the destroyed or lost property has no real market value or where the value of the property to the owner is greater than the market value."[15] We applied this measure to Landers's lost photographs and videotapes, concluding that damages under this standard would include the cost of purchasing and developing the film and purchasing blank videotapes.[16] In *Landers,* we also reaffirmed that damages for a chattel's subjective emotional or sentimental value to the

owner were generally unavailable, concluding that such considerations were limited to the context of intentional infliction of emotional distress claims.[17]

*Richardson* and *Landers* are generally consonant with the modern case law in other jurisdictions that have addressed the valuation of pet dogs. The majority rule holds that the proper measure of recovery for the killing of a dog is the dog's fair market value at the time of its death.[18] But other courts have recognized that the actual value to the owner, rather than the fair market value, may sometimes be the proper measure of the dog's value.[19] Commentators suggest that the standard calculation of damages, typically fair market value, may not adequately compensate the pet owner for the loss.[20]

We agree with those courts that recognize that the actual value of the pet to the owner, rather than the fair market value, is sometimes the proper measure of the pet's value. In determining the actual value to the owner, it is reasonable to take into account the services provided by the dog[21] or account for zero market value.[22] Where, as here, there may not be any fair market value for an adult dog, the "value to the owner may be based on such things as the cost of replace-

---

13. 705 P.2d at 456 (citations omitted).

14. 915 P.2d 614 (Alaska 1996).

15. *Id.* at 618.

16. *See id.* at 618–20.

17. *See id.* at 619.

18. *See generally* Miller, *supra* note 11; *see also Richardson,* 705 P.2d at 456.

19. *See* Miller, *supra* note 11, at 656–59; *see also Landers,* 915 P.2d at 618.

20. *See* Debra Squires–Lee, Note, *In Defense of Floyd: Appropriately Valuing Companion Animals in Tort,* 70 N.Y.U. L.Rev. 1059, 1081–83 (1995). In contrast to Alaska case law, a small minority of jurisdictions has recognized that the value of a pet dog may include sentimental or companionship value. *See* Miller, *supra* note 11, at 659–62. For example, a New York court has held that the loss of companionship is an element of a dog's actual value. *See Brousseau v. Rosenthal,* 110 Misc.2d 1054, 443 N.Y.S.2d 285, 286–87 (N.Y.Civ.1980). An Illinois appellate court analogized a pet to items such as photographs

that have no market value and thus warrant damages assessed under the "actual value to the owner" standard. *Jankoski v. Preiser Animal Hosp.,* 157 Ill.App.3d 818, 110 Ill.Dec. 53, 510 N.E.2d 1084, 1086–87 (1987). The court then held that the "concept of actual value to the owner may include some element of sentimental value in order to avoid limiting the plaintiff to merely nominal damages." *Id.* at 1087. These cases quite obviously conflict with *Richardson* and *Landers,* in which we expressly rejected damages based on sentimental value for the loss of personal property.

21. *See Demeo v. Manville,* 68 Ill.App.3d 843, 25 Ill.Dec. 443, 386 N.E.2d 917, 918–19 (1979); *Quave v. Bardwell,* 449 So.2d 81, 84 (La.App. 1984); *Paguio v. Evening J. Ass'n,* 127 N.J.L. 144, 21 A.2d 667, 668 (1941) (cited in *Richardson* ); *McDonald v. Ohio State Univ. Veterinary Hosp.,* 67 Ohio Misc.2d 40, 644 N.E.2d 750, 751 (Ct.Cl.1994); *Zeid v. Pearce,* 953 S.W.2d 368, 369 (Tex.App.1997).

22. *See Wilcox v. Butt's Drug Stores,* 38 N.M. 502, 35 P.2d 978, 979 (1934); *Green v. Leckington,* 192 Or. 601, 236 P.2d 335, 337 (1951) (cited in *Richardson* at 456).

ment, original cost, and cost to reproduce."[23] Thus, an owner may seek reasonable replacement costs—including such items as the cost of purchasing a puppy of the same breed, the cost of immunization, the cost of neutering the pet, and the cost of comparable training. Or an owner may seek to recover the original cost of the dog, including the purchase price and, again, such investments as immunization, neutering, and training. Moreover, as some courts have recognized, it may be appropriate to consider the breeding potential of the animal, and whether the dog was purchased for the purpose of breeding with other purebreds and selling the puppies.[24] But while these damages may more accurately reflect the animal's actual value to the owner, Mitchell may not recover damages for her dog's sentimental value as a component of actual value to her as the dog's owner. Therefore, the trial court did not err in prohibiting Mitchell's claims for damages of emotional and sentimental value. Mitchell's concession that her adult dog had no resale value does not, however, prohibit her from recovering for her loss.

## IV. *CONCLUSION*

 The superior court here dismissed Mitchell's intentional infliction of emotional distress and punitive damages claims on summary judgment. We AFFIRM these rulings. While the superior court refused to grant summary judgment on the conversion claim, it limited compensatory damages under this claim to the dog's fair market value. It then dismissed the claim because the fair market value of Mitchell's adult dog was zero. Because we recognize that a pet's actual value to the owner may exceed its fair market value and include the original cost to the owner or full reasonable replacement costs, we REVERSE the superior court's dismissal of the case and REMAND to the superior court for trial on the conversion claim and determination of damages based on the principles set out in this opinion.

---

**23.** *Landers,* 915 P.2d at 618.

**24.** *See Bueckner v. Hamel,* 886 S.W.2d 368 (Tex. App.—Houston 1994); *see also Quave v. Bardwell,* 449 So.2d 81 (La.App.1984).