Raymond V. JONES, Appellant,

v.

STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.

No. S–10743.

Supreme Court of Alaska.

Dec. 16, 2005.

---

4. *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div.*, 994 P.2d 365, 368 (Alaska 1999).

James Alan Wendt, Law Offices of James Alan Wendt, Anchorage, for Appellant.

Jason T. Mogel, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Floyd Ainsworth, a correctional officer, wrote a racially and sexually offensive memorandum terminating inmate Raymond Jones's job as a prison barber. Jones sued Ainsworth and the Alaska Department of Corrections (collectively, the state), claiming intentional infliction of emotional distress (IIED) and unlawful termination from his prison-barber job because of race or sex, in violation of the Alaska Human Rights Act. The superior court dismissed Jones's IIED claim on summary judgment but allowed his human-rights-act claim to proceed to trial. Before trial, the state made an offer of judgment to Jones, which he refused. At trial, the court instructed the jury that Jones could only claim emotional damages for emotional distress suffered after his termination occurred. The jury found that Jones had been unlawfully terminated, but awarded him only a small amount of damages, specifying that its award was for emotional distress. The court awarded costs and attorney's fees to the state, finding that its pretrial offer of judgment exceeded the jury's verdict. Jones appeals, claiming that the superior court erred in dismissing his IIED claim, in instructing the jury on the scope of Jones's right to recover emotional damages, and in awarding attorney's fees to the state. We affirm, concluding that Jones has failed to show prejudice from any error in dismissing his IIED claim, that the jury was properly instructed on Jones's right to emotional damages, and that the court properly awarded the state costs and fees for prevailing on its offer of judgment.

## II. FACTS AND PROCEEDINGS

Raymond Jones, an African–American, was an inmate assigned to Spring Creek Correctional Center. He worked as a barber, cutting other inmates' hair for a nominal salary. Correctional Officer Floyd Ainsworth was Jones's supervisor.

On August 4, 1997, Ainsworth gave Jones the following memo:

> This memorandum is to inform you, that you have been fired as an APS barber/rec worker. You are a lop, lame, sissy, cakeboy, and your girl is a mud-duck. You are in fact a no talented bum. You listen to Vanilla Ice, in your 1975 AMC Pacer, and that's just not cool. In fact one of the brother's [sic] told me that you were white, and just had a really good tan. Maybe the kitchen is looking for a new pots and pans man!

Jones interpreted this memo as containing sexual and racial slurs and as being intended to terminate his employment.[1] He stopped reporting for work and kept the memo in his possession but did not report it. The memo was discovered by correctional officers after Jones's transfer to Wildwood Correctional Center in July 1998. Its discovery triggered a departmental investigation into Ainsworth's conduct and eventually led to his termination.

Jones later sued the state, alleging that the August 4 memorandum had intentionally inflicted emotional distress and had violated

---

1. Jones offered the following interpretation of the memo:

   A "sissy" and "cake-boy" are each common offensive terms for homosexual.... A "mud-duck" is an offensive [term] for an individual who engages in anal intercourse though Plaintiff is of the belief that this is simply a reference to the attractiveness of his girlfriend.... "Vanilla Ice" was a white entertainer who had adopted a superficial and stereotypical black persona in his performances and who was widely denounced by the [A]frican-[A]merican community as a charlatan and opportunist. The accusation of really being "white" with a "really good tan" was another racial affront attacking Mr. Jones's own racial and cultural identity through demeaning characterization.... The reference to driving a "1975 AMC Pacer" is a suggestion that Mr. Jones is worthy of only the least desirable of material objects while the suggestion that he seek employment as a "pots and pans man" is an insulting characterization of [A]frican-[A]mericans as worthy of only menial jobs.

the Alaska Human Rights Act[2] by terminating Jones's employment as a prison barber for racial and sexual reasons.[3]

The state moved for summary judgment on Jones's claims. Regarding the IIED claim, which required proof of outrageous conduct and serious emotional harm, the state argued that Jones's claim was deficient because the August 4 memo was at most an insult, rather than an outrageous act, and because Jones's general assertion that the memo had caused him to feel "anxious and upset" would not support a finding of serious emotional harm. In response, Jones insisted that "racial and sexual indignities such as those cast at Mr. Jones are not 'mere' insults, annoyances or trivialities." He also offered to present additional evidence concerning the seriousness of his emotional injuries.

After hearing oral argument on the summary judgment motion, the superior court dismissed Jones's IIED claim, finding that he had failed to offer any evidence of severe emotional distress. However, the court denied the state's motion for summary judgment on Jones's human-rights-act claim, finding sufficient evidence to warrant a trial on whether the memo wrongfully terminated Jones's employment as a prison barber because of sex or race.

Before trial the state made Jones a $12,000 offer of judgment. Jones rejected the offer and the case proceeded to jury trial on the human-rights-act claim. At the conclusion of the trial, over Jones's objection, the court instructed the jury that Jones "is not entitled to emotional damages that he is claiming occurred before he received the memorandum from Floyd Ainsworth," and that the jury could "only consider emotional damages that may have occurred after Mr. Jones received the memorandum."

The jury returned a special verdict finding that the August memorandum had violated the human rights act by terminating Jones's employment for impermissible racial or sexual reasons. But the verdict found that this violation had caused Jones to suffer only one kind of compensable injury—emotional suffering; and it awarded him just $3,900 in emotional damages.

Because its pretrial offer of judgment exceeded the jury's verdict, the state moved for an award of costs and attorney's fees. Jones filed a competing claim, seeking costs and fees as the prevailing party. The court declared the state to be the prevailing party by reason of its pretrial offer of judgment and awarded it $16,902 in costs and attorney's fees. Jones appeals.

## III. DISCUSSION

### A. Jones's IIED Claim

██ The elements of the tort of IIED require that the defendant intentionally or recklessly engage in extreme or outrageous behavior causing severe emotional distress or bodily harm to the plaintiff.[4] Before submitting an IIED claim to the jury, the trial judge must determine "whether the severity of the emotional distress and the conduct of the offending party warrant a claim of [IIED]."[5] If this threshold test is conducted at the time of summary judgment, the court must afford the plaintiff all favorable factual inferences.[6]

The superior court considered Jones's evidence and granted summary judgment for the state. Without making a finding as to whether the memorandum amounted to extreme or outrageous conduct, the court decided that Jones "has failed to establish that there is a genuine issue of material fact as to whether there was severe emotional distress.... There doesn't appear to be any assertion that there was distress as a result of Mr. Ainsworth giving the memo to Mr. Jones."

██ Jones contends that because he presented sufficient evidence to establish severe

---

2. *See* AS 18.80.255.

3. Jones advanced several other claims that are not at issue here and thus require no discussion.

4. *Richardson v. Fairbanks N. Star Borough,* 705 P.2d 454, 456 (Alaska 1985).

5. *Id.*

6. *Lincoln v. Interior Reg'l Hous. Auth.,* 30 P.3d 582, 589 (Alaska 2001).

distress, the superior court improperly granted summary judgment against him on his IIED claim. Jones urges us to re-examine the evidence before the trial court at summary judgment, maintaining that he "was subject to racial and sexual insults that would normally result in fisticuffs in a prison environment ... and he testified under oath regarding his fear." Arguing from cases in which we have previously recognized that "a wrongful discharge may give rise to an intentional infliction of emotional distress claim," Jones insists that the distress inflicted by Ainsworth's memorandum should be deemed sufficient to survive summary judgment.

■ But even if Jones presented enough evidence of serious emotional distress to prevent the superior court from dismissing his IIED claim on summary judgment, Jones's argument would still be unavailing unless Jones further showed that the court's erroneous ruling caused actual prejudice.[7] Here, the state asserts that any error was harmless because the jury's award for emotional damages on Jones's human-rights-act claim covered all the emotional damages that Jones could have received on his IIED claim.[8]

■ Our cases show that improperly dismissing a claim will be harmless error when the claimant manages to recover the same damages by pursuing an alternative theory. In *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* we held that the plaintiff had not suffered prejudice from dismissal of his fiduciary fraud claim, because he was able to present the same evidence and seek punitive damages under his surviving claims.[9] Under this rule, if the jury verdict on Jones's human-rights-act claim compensated Jones for all the damages he would have been entitled to recover on his claim for IIED, then he suffered no actual prejudice, even assuming that his IIED claim was erroneously dismissed before trial.

■ We have recognized that damages allowed under the Alaska Human Rights Act, which prohibits discriminatory acts by the state,[10] are essentially tort damages, thus "authoriz[ing] the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach."[11] Accordingly, when a plaintiff proves a violation under the act, actual damages are available for mental anguish.[12] Here, Jones's human-rights-act claim specifically alleged that Ainsworth's August 4 memorandum terminated his prison job and that the termination violated the act because the memo was motivated by impermissible considerations of race and sex. The jury expressly found these allegations to be true and awarded monetary damages for his emotional anguish; indeed, the only money the jury awarded was for the emotional damages that Jones experienced because of the August 4 memo.

Like his human-rights-act claim, Jones's IIED claim was based on the August 4 memo. In accusing Ainsworth of intentionally inflicting emotional distress, Jones's

---

7. *See* Alaska R. Civ. P. 61; *Dobos v. Ingersoll,* 9 P.3d 1020, 1024 (Alaska 2000) (holding that under the harmless error test, burden is on appellant to show prejudice).

8. It is well settled that the trial court's choice of a particular legal theory does not define the scope of our appellate review and that we may uphold the trial court's judgment on any legal theory supported by the record—even one that the trial court expressly rejects. We have often relied on this rule to resolve appeals on the most efficient available ground. *See Alaska Trademark Shellfish, LLC v. State,* 91 P.3d 953, 956–57 & n. 11 (Alaska 2004) (citing cases).

9. 828 P.2d 745, 760 (Alaska 1992).

10. AS 18.80.255 reads, in relevant part:
   It is unlawful for the state or any of its political subdivisions

(1) to refuse, withhold from, or deny to a person any local, state, or federal funds, services, goods, facilities, advantages, or privileges because of race, religion, sex, color, or national origin.

11. *Loomis Electronic Protection, Inc. v. Schaefer,* 549 P.2d 1341, 1344 (Alaska 1976) (quoting *Curtis v. Loether,* 415 U.S. 189, 194–96, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974)).

12. *Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 915 (Alaska 1991) ("[R]ecovery of compensatory damages for mental anguish [is for] 'all those damages directly and naturally resulting, in the ordinary course of events, from the injury in question.' ") (quoting *Mitchell v. Seaboard Sys. R.R.,* 883 F.2d 451, 453 (6th Cir. 1989)).

complaint focused solely on the emotional damages he actually suffered as a result of receiving the memo.[13] Specifically, Jones's complaint alleged that the state was liable for IIED because "[t]he memorandum notifying Raymond Jones of his employment termination was racially and sexually offensive." Nothing in Jones's subsequent summary judgment pleadings or his counsel's oral arguments on the state's summary judgment motion remotely suggested that his IIED claim was grounded on conduct preceding the August 4 incident.

In his opposition to summary judgment, Jones claimed that a "single event of racial and/or sexual insult"—Ainsworth's memo— sufficed to bring his IIED claim to the jury. He explained that his human-rights-act claim was likewise based on his discriminatory termination, the "los[s] of his barber job." At the oral argument on the summary judgment motion, Jones's counsel stated, "Regarding the Alaska Human Rights Act ... it seems to hinge on whether or not Mr. Jones lost his job as a barber as a result of or at the same time as delivery of this memorandum." And he explained that Jones's IIED claim was premised on "[t]he one incident with the derogatory, insulting and somewhat intimidating" memo.

Although Jones's deposition did include a brief description of a separate incident in which Ainsworth apparently threatened Jones with a broomstick, Jones failed to cite, discuss, or otherwise call the superior court's attention to that incident as having any potential bearing on his IIED claim. Instead, as already mentioned, he limited his summary judgment arguments concerning that claim to Ainsworth's August 4 memo and the emotional distress ensuing from that memo. Nor did Jones ever voice any broader theory of his IIED claim as a potential reason for reconsideration.

Considering the manner in which Jones framed and presented his IIED claim to the superior court, we find no sound basis to construe the claim as seeking any emotional damages beyond those that the jury actually considered in deciding his human-rights-act claim: the emotional damages attributable to Ainsworth's August 4 memo. Although the summary judgment record included some evidence of pre-termination conduct by Ainsworth—the broomstick incident—that arguably might have allowed Jones to expand his IIED claim, Jones's failure to assert this broader theory of IIED below precludes us from considering it in our harmless error analysis here.

Under these circumstances, we must accept Jones's theory of IIED as he actually asserted it in arguing his case on summary judgment, not as he might have reshaped the theory had his claim eventually proceeded to trial.[14] Moreover, even if the more expansive view of Jones's IIED claim could properly be raised for the first time on appeal, we would still decline to consider it because Jones has not raised it in his briefing. Jones does refer to the broomstick incident briefly in the section of his argument discussing his human-rights-act claim—a separate issue that we address below. But he does not argue this evidence—or even mention it—in his argument challenging the dismissal of his claim for IIED. Jones's opening brief makes no effort to show how his IIED claim might have encompassed a broader range of emotional damages than the damages that the jury could have awarded on his claim for violating the Human Rights Act. Even though the state expressly argues in its appellee's brief that dismissal of Jones's IIED claim amounted to harmless error, Jones's reply brief makes no attempt to explain why he would have been entitled to claim additional emotional damages for his IIED claim.

In short, both below and on appeal, Jones has consistently chosen to focus his IIED claim on a single incident of intentionally inflicted emotional harm: the August 4 memorandum that effectively terminated his prison employment. In his arguments addressing that claim, he has never asserted or

---

13. Jones's IIED claim did not include a claim for punitive damages.

14. Cf. *Still v. Cunningham,* 94 P.3d 1104, 1111 (Alaska 2004) ("Neither the trial court nor the movants should be required to guess whether factual evidence might support defenses that are not identified or relied on.").

argued that he based his IIED claim on any other intentional and outrageous act. Nor has he ever claimed or suggested a right to recover IIED damages suffered because of another incident.[15] This same incident, and its resulting injuries, formed the crux of his claim under the Alaska Human Rights Act as well. Since Jones sought the same emotional distress damages on both claims, the claims overlapped. The special verdict rendered under the act establishes that Jones was in fact compensated for the emotional injuries underlying both claims.

Even if any error occurred in dismissing his IIED claim, then, the error appears to be harmless.

### B. Jury Instruction No. 14.5

■ Over Jones's objection, the superior court gave Instruction No. 14.5 to the jury:

Mr. Jones is not entitled to emotional damages that he is claiming occurred before he received the memorandum from Floyd Ainsworth dated August 4, 1997. If you find that Mr. Jones was terminated by the memorandum you may only consider emotional damages that may have occurred after Mr. Jones received the memorandum.

Jones argues on appeal that this instruction misconstrued the law: that his claim under the act allowed him to recover for emotional damages caused by Ainsworth before the August 4 memo that terminated Jones's employment.[16] We disagree.

The Human Rights Act enabled Jones to recover damages from the state for any deni-

al of "funds, services, goods, facilities, advantages, or privileges because of race, religion, sex, color, or national origin." [17] Here, Jones alleged, and the jury found, that the state had violated the act because of Ainsworth's August 4 memo, which effectively terminated Jones's job as a prison barber based on impermissible considerations of race and sex. As the superior court properly reasoned in deciding to give the challenged jury instruction, the plain terms of the act only allowed Jones to recover those damages occurring "because of" the August 4 memo:

[T]he damages have to stem from the act itself that forms the underlying basis of the complaint. And the underlying basis of the complaint, the cause of action, is the termination and the damages that would come after that, not preceding it.

Moreover, Instruction No. 14.5's express prohibition of an award for emotional damages occurring before Jones was terminated accords with other, more general, instructions received by the jury. For example, Instruction No. 9 advised the jury that Jones could be awarded damages for emotional distress "from the date of any violation of his rights to the date of trial." [18] And under Jury Instruction No. 4, the specific violation Jones needed to prove to establish a violation of his rights was his termination from the prison job by Ainsworth's racially and sexually motivated memo.[19] Jones did not object to these instructions below and does not challenge them now. Because these instructions defined Jones's right to recover emotional

---

15. The dissent criticizes this opinion as seeming to "fault Jones for focusing his presentation in the trial court on the emotional distress damages he suffered as a result of the August 4 termination memo." Dissenting Op. at 359–360. But we ascribe no fault to Jones; we simply base our decision on the arguments that he has chosen to advance on this point.

16. We exercise de novo review in considering challenges to a trial court's rulings on jury instructions. *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1030 (Alaska 2002).

17. AS 18.80.255(1).

18. Jury Instruction No. 9 provided:

Mr. Jones also makes a claim for past emotional distress. If you find that Mr. Jones's

rights under the Alaska Human Rights Act were violated, you may award him a fair amount to compensate for emotional distress caused by that injury.

Such an award should fairly compensate Mr. Jones for actual emotional distress from the date of any violation of his rights to the date of trial[.]

19. According to Instruction No. 4, "[t]o establish that his rights were violated under that Act," Jones had to prove:

(1) ... that he was terminated from his position as a barber in connection with the memorandum ... given to him by Floyd Ainsworth; and

(2) ... that racial or sexual discrimination was a motivating factor in the decision to terminate his employment.

damages in essentially the same way as Instruction No. 14.5, albeit less explicitly, we see no reason to conclude that the jury would have reached a different verdict, even if the superior court had yielded to Jones's objections and denied the state's request to give Instruction No. 14.5.[20] We thus find no merit in Jones's challenge to this instruction.

## C. Attorney's Fees

Under Alaska Civil Rule 68, a party may make an offer of judgment "[a]t any time more than 10 days before the trial begins."[21] If the judgment that a single offeree achieves is at least five percent less favorable to the offeree than the offer, the offeree "shall pay all costs as allowed under the Civil Rules and shall pay [a percentage of the] reasonable actual attorney fees incurred by the offeror from the date the offer was made."[22]

Here, Jones declined the state's pretrial offer of judgment for $12,000 "inclusive of all prejudgment interest, costs and attorney[']s fees." After the jury awarded Jones $3,900, the state moved for costs and fees under Rule 68. Upon comparing the offer to the judgment, the trial court granted the state's motion, finding that the offer was sufficient to entitle the state to costs and attorney's fees—even with prejudgment interest, attorney's fees under Alaska Civil Rule 82 and allowable costs added to the judgment.[23] The state claimed Rule 68 fees of $24,089.60. From this amount the court offset Jones's recovery, yielding a net judgment for the state of $16,902.60.

■ Jones appeals this award, arguing that his total judgment should have been more favorable than the state's offer. Jones advances three theories to support his claim. Jones first suggests that the state's offer of judgment was deficient because the state extended the offer "nearly two and a half years after the filing of Appellant's complaint." But Rule 68(b) allows an offer of judgment to be made "more than 10 days before the trial begins." The state's offer complied with the rule's requirement.

■ Jones next asserts that, as a successful civil rights plaintiff, he was entitled to recover his actual fees under 42 U.S.C. § 1988(b), a federal provision authorizing courts to award prevailing civil rights plaintiffs their reasonable attorney's fees. But Jones pursued his claim under Alaska's Human Rights Act, which has no comparable provision. In *Moody–Herrera v. State, Department of Natural Resources,* we held that Civil Rule 82 applies to civil rights plaintiffs who sue under Alaska's act.[24] We declined to incorporate the federal model in our rules, noting that awards of attorney's fees under our rules "follow[ ] a fundamentally different principle."[25] *Moody–Herrera* controls our decision here.

■ Finally, Jones claims that, in determining whether his total award exceeded the state's offer, the court should have calculated his fees on an enhanced basis, using the factors listed in Civil Rule 82(b)(3). But Jones does not discuss how these factors apply to his case and fails to explain why the superior court's calculation of his fees was manifestly unreasonable.[26]

20. Furthermore, we note that Instruction No. 14.5 did not completely bar Jones from relying on evidence of Ainsworth's hostile or menacing pre-termination conduct toward Jones. To the extent that this pre-termination conduct might have made Jones more vulnerable to emotional distress, thus heightening or prolonging the distress that he suffered because of the August 4 memo, the pre-termination conduct would have been relevant. In our view, Instruction No. 14.5 would not have precluded its consideration.

21. Alaska R. Civ. P. 68(a).

22. *Id.* at (b). The percentage of fees to be paid under the rule is determined by a sliding scale that varies depending on how far in advance of trial the offer was made. *Id.*

23. *See Steiner v. Farnsworth,* 601 P.2d 266, 270 n. 4 (Alaska 1979) (describing proper method for comparing offer of judgment to offeree's judgment).

24. 967 P.2d 79, 89–90 (Alaska 1998).

25. *Id.*

26. On issues involving enhancement of fees under Rule 82(b)(3), we review only to determine if the trial court's decision was manifestly unreasonable. *Glamann v. Kirk,* 29 P.3d 255, 265–66 (Alaska 2001) (citations omitted). Here, although Jones did submit a conclusory discussion of the enhancement factors to the superior court, that discussion provides no meaningful basis for

We thus find no reason to disturb the superior court's award of costs and fees.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

CARPENETI, Justice, concurring.

FABE, Justice, dissenting.

CARPENETI, Justice, concurring.

I agree with today's opinion upholding summary judgment in favor of the state on Jones's claim of intentional infliction of emotional distress (IIED), but I disagree with the court's reasoning in reaching this conclusion. I would affirm Judge Gleason's opinion because it was correctly decided, and therefore would find it unnecessary to undertake a harmless error analysis.

Today's opinion, assuming error on the part of the trial court, addresses first whether any error was harmless.[1] But "[h]armless-error analysis is triggered only *after* the reviewing court discovers that an error has been committed."[2] For that reason, I turn first to the question whether the superior court erred in granting summary judgment to the state on Jones's IIED claim.

We have established that in order to recover for intentional infliction of emotional distress a plaintiff has a high burden of proof. To establish a prima facie case, a plaintiff must demonstrate that "(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe."[3] In commenting on the first required showing, we have stated that a court may find liability for IIED only when " 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "[4] As to the third and fourth requirements—that the conduct cause "severe emotional distress"—we have defined severe emotional distress as " 'distress of such substantial quality or enduring quantity that no reasonable person in a civilized society should be expected to endure it.' "[5]

The superior court held that Jones presented no evidence of severe distress, and the record amply shows that the court's conclusion was not an abuse of discretion.[6] Jones's opposition to summary judgment failed to discuss any distress suffered by Jones that resulted from Ainsworth's letter, much less claim that Jones suffered "severe" emotional distress. The dissent cites nine pieces of evidence that it says support Jones's IIED claim.[7] However, only one—Jones's deposition testimony[8]—even goes to

---

concluding that the superior court's award of fees was manifestly unreasonable.

1. Slip Op. at 346–347.

2. *Lockhart v. Fretwell*, 506 U.S. 364, 370 n. 2, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (emphasis in original). *See also Wyatt v. State*, 981 P.2d 109, 112 (Alaska 1999) ("If the trial court erred in its ruling, we *then* determine whether the error was harmless." (Emphasis added.)). While we do not consistently utilize this approach, *see, e.g., Cummins, Inc. v. Nelson*, 115 P.3d 536, 546–47 (Alaska 2005), I believe that where the trial court clearly has not erred, such as here, we should eschew harmless error analysis.

3. *McGrew v. State, Dep't of Health & Soc. Servs.*, 106 P.3d 319, 324 (Alaska 2005) (quoting *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 589 (Alaska 2001)). Regarding these elements, the trial court must make a "threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim." *Id.* at 325 (quoting *Lincoln*, 30 P.3d at 589). We review these threshold findings for an abuse of discretion. *Id.*

4. *Lybrand v. Trask*, 31 P.3d 801, 803 (Alaska 2001) (quoting *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 133 (Alaska 2000)).

5. *Fyffe v. Wright*, 93 P.3d 444, 456 (Alaska 2004) (quoting *Teamsters Local 959 v. Wells*, 749 P.2d 349, 359 n. 14 (Alaska 1988)). This definition of "severe emotional distress" accords with the Second Restatement. *See* RESTATEMENT (SECOND) OF TORTS § 46, cmt. j (1965).

6. We review the superior court's decision as to whether a plaintiff met the threshold burden of showing "severe emotional distress" under the abuse of discretion standard. *Lincoln*, 30 P.3d at 589.

7. Dissenting Op. at 355–356.

8. *Id.* at 355–356.

the issue whether Jones actually suffered distress.[9] And that testimony does not support the conclusion that he suffered *severe* emotional distress. At his deposition, when he was asked whether he suffered any consequences as a result of Ainsworth's letter, here is what Jones said about the level of his emotional distress:

> I just got—yeah, basically, wouldn't ever do the things I liked to do, cut hair. You know that's what I like doing is cutting hair, I wasn't able to cut hair, you know what I mean.

> I feared all the time because I didn't know what the next step was going to be because [Ainsworth] was still there. I didn't know if, you know every time I hear the doors open or keys, it still bugs me, it bugs me today, you know because I never know what is going to happen.

This quotation is the *only* evidence of actual emotional distress in the entire record. This sort of vague, generalized fear or annoyance is insufficient to satisfy the threshold showing required by IIED;[10] if it were otherwise, then the showing is a mere formality that will always be met. At oral argument on summary judgment in the superior court,

Jones's counsel conceded that he had not put forth an affidavit or any other independent or expert evidence supporting Jones's distress from the Ainsworth letter. Rather, counsel alluded generally to this one quotation, and added the unavailing fact that Jones had pleaded severe emotional distress in his complaint. Because Jones did not present any evidence that, as a result of Ainsworth's action, he had suffered the kind of severe emotional distress that no reasonable person could be expected to endure, the superior court correctly denied summary judgment on Jones's IIED claim.

The dissent fails to discuss the trial court's conclusion that Jones did not raise a genuine issue of material fact as to whether he suffered severe emotional distress[11]—an evidentiary showing that our case law demands, as noted above. Instead, the dissent looks at the defendant's action (not its effect on the plaintiff) and relies on *United States v. Balistrieri*[12] for the proposition that "[t]he more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action."[13] But a

9. The other pieces of evidence deal either with actions that Ainsworth allegedly took against Jones, not the effect of those actions on Jones (points 1, 2, 3, and 5), or an expert's opinion that Ainsworth's actions "could have caused" an adverse effect on Jones (points 6, 7, 8, and 9). See below for more discussion of this expert's opinion.

10. We have held that examples of severe emotional distress include " 'neuroses, psychoses, chronic depression, phobia and shock.' However, temporary fright, disappointment or regret does not suffice under this standard." *Chizmar v. Mackie*, 896 P.2d 196, 204–05 (Alaska 1995) (quoting *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559, 570 (La.1990)).

11. At the argument on summary judgment, Judge Gleason asked counsel for Jones what evidence had been produced that Jones suffered severe emotional distress. Counsel responded that Jones's deposition testimony "certainly indicated that he suffered emotional distress." When the court asked for the part of the deposition counsel was referring to, counsel was unable to locate it, but stated, "It is absolutely true that Mr. Jones did not go into detail regarding the emotional distress but he testified that it certainly disturbed him." Judge Gleason followed with, "But nothing to indicate that he was severely emotionally

distressed?" to which counsel conceded, "Well, . . . the word 'severely' didn't come out of Mr. Jones's mouth."

In announcing her findings on whether plaintiff met his burden of producing some evidence of severe emotional distress, Judge Gleason found that "plaintiff has failed to establish that there is a genuine issue of material fact as to whether there was severe emotional distress."

12. 981 F.2d 916 (7th Cir.1992), *cert. denied* 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993).

13. *Id.* at 932. On this issue—whether the outrageousness or maliciousness of the defendant's action may substitute for the lack of showing of severe emotional distress on the plaintiff's part—we have said:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

plaintiff must still present *some* evidence of severe emotional distress, and Jones did not. Moreover, while it is true that the court in *Balistrieri* characterized the evidence there as "somewhat general and conclusory" and "minimal," [14] the evidence there was much stronger than the evidence in Jones's case. Each of several plaintiffs in *Balistrieri* testified to being "upset, humiliated, embarrassed or shamed." [15] Individual plaintiffs testified to being "nauseous, embarrassed, and ashamed," [16] "hurt and disappointed," [17] and damaged in their "relationship with her husband, children, and other family members;" [18] indeed, one characterized it as "one of the worst things" that had happened to him.[19]

It is instructive to compare a later case that relied on *Balistrieri*, from the same Seventh Circuit, for an indication of how that court treats the requirement of a showing of actual emotional distress. In *Alston v. King*,[20] the court found that several of the plaintiff's claims of distress—which were more serious than Jones's claims of distress [21]—were insufficient standing alone to support emotional distress damages. (It was only when the court added consideration of additional facts, including that the plaintiff was escorted to his office by a police officer and made to clean out his desk while "employees were gathered around, and some were crying, others were befuddled, and still others were mocking or laughing at him" [22]

that the court found a sufficient basis for emotional distress damages.) The plaintiff's distress that the Seventh Circuit found insufficient was as follows:

> Alston nevertheless argues that ... he submitted sufficient evidence of damages to avoid judgment as a matter of law. The evidence relating to emotional distress that was admitted at trial was sparse. We have Alston's bare testimony that ... he suffered "humiliation, embarrassment, stress [and] rejection" [and became] depressed, that he had·a tendency to abuse alcohol, and that it materially affected the quality of his relationship with the woman he was dating and that he was no longer engaged to her.[ 23]

Comparing this evidence from *Alston*—which the Seventh Circuit characterized as "sparse" and would have found as insufficient without more to avoid a contrary judgment as a matter of law [24]—with the evidence in the present case leads to the conclusion that Judge Gleason properly granted summary judgment to the state. Jones said only that he was no longer able to cut hair, he "feared all the time," and "it still bugs me today." The allegations of emotional distress in *Alston* were substantially more serious, including humiliation, embarrassment, stress, rejection, and depression, leading to alcohol abuse and impinging on relations with others. Yet that evidence standing alone was insuffi-

as atrocious, and utterly intolerable in a civilized community. *The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.*
*Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1289 (Alaska 2001) (emphasis added), (quoting REST. (SECOND) OF TORTS § 46(1) cmt. d (1965)).

14. 981 F.2d at 933.

15. *Id.* at 931.

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. 231 F.3d 383 (7th Cir.2000).

21. The dissent places great weight on the seriousness of the defendant's acts, arguing that Ainsworth's acts in the present case were "significantly more serious" than the defendant's acts in *Alston v. King*. Dissenting Op. at 357–358. But this suggests a false equivalence between the *plaintiff's claims* of emotional distress with the *defendant's acts* that allegedly caused the distress. No doubt Ainsworth's acts may fairly be described as extreme, but Jones's actual claims of emotional distress resulting from those acts cannot accurately be so described. The law requires that the distress suffered must be extreme before the action lies.

22. 231 F.3d at 389.

23. *Id.* at 387. The court noted that on cross-examination Alston acknowledged that he was not abusing alcohol, had never sought counseling, and first became engaged to the woman in question a year after his termination. *Id.* at 388.

24. *Id.* at 387.

cient to meet the severe injury test, even when considering the rule that racial discrimination, which was involved in *Alston*, is the type of action that one could reasonably expect to lead to emotional distress. Judge Gleason did not abuse her discretion in determining that Jones did not present evidence of "severe" emotional distress sufficient to avoid summary judgment.

The dissent also discusses emotional distress arising from a "rat" comment allegedly made by Officer Gilliam. The superior court refused to consider any distress resulting from this comment on procedural grounds.[25] But even assuming that the "rat" comment is within the scope of Jones's appeal, Jones has not offered any specific evidence of distress resulting from it. Jones places his reliance on the expert testimony of Ernest C. Weber, a corrections and prison consultant who never met Jones. Mr. Weber opined that being called a "rat" in prison is a serious matter and that it "*could have caused* him severe mental anguish." (Emphasis added.) While this is undoubtedly true, Mr. Weber's testimony has little bearing on whether Jones *actually* suffered emotional distress or produced evidence that he did. In contrast, it appears that Jones's deposition testimony deviates from Mr. Weber's general prediction. Jones's testimony was that being called a "rat" was serious,

> because for me *if I was* in a real, you know, *somewhere that people didn't know me*, if I was like in a federal prison, for him to say what he said could have jeopardized my life, you know. And you can't go calling people rats and stuff like that in a maximum security prison and that's coming from a guard, that's your life, in other prisons, *but maybe not in Alaska,* but that's the way I look at it.
>
> *And people that knew me, know that I'm not no rat and they know I'm not that type of person.* But I'm saying *if I was in any other place,* that could have caused my life

in Seward, you know, if you would have got the right person hearing this.

(Emphases added.) His testimony went on to suggest that all people who heard the "rat" comment were his friends, and that they would never have believed the charge. In fact, Jones agreed that "[t]hey knew that this was a bunch of bullshit." The only harm suggested by Jones was "[j]ust the anxiety" caused by knowing that the comment *could have had* negative consequences. While we do not demand that a threshold showing of severe emotional distress include concrete medical evidence,[26] we do require that the allegation be supported by the record. Here, Mr. Weber's conjecture regarding the possible consequences of the "rat" comment was contradicted by Jones's own testimony of what actually happened.

Because the record supports the superior court's conclusion that Jones failed to offer evidence of severe emotional distress, I would affirm the grant of summary judgment on the merits. Judge Gleason did not abuse her discretion in determining that Jones did not meet his threshold requirement of producing evidence that he had suffered severe emotional distress; accordingly, her decision to grant summary judgment to the state on the IIED claim was correct. For this reason I agree to affirm her decision.

FABE, Justice, dissenting.

The court resolves this appeal through a harmless error analysis, without addressing the propriety of the superior court's dismissal of Jones's intentional infliction of emotional distress (IIED) claim. Because I believe that Jones presented sufficient evidence to satisfy the threshold requirements for an IIED claim, I would hold that the superior court erroneously dismissed this claim on summary judgment. And because Jones's remaining claim for wrongful termination under the Alaska Human Rights Act failed to compensate him for all damages sought un-

**25.** Officer Gilliam had been earlier dismissed from the case, and the court reasoned that it could not hold the state vicariously liable for the acts of an employee who had not first been held liable for the underlying conduct. That conclusion seems correct to me.

**26.** *See Richardson v. Fairbanks N. Star Borough,* 705 P.2d 454, 457 n. 6 (Alaska 1985) (expert medical testimony is most effective method of demonstrating severe distress, but it is not exclusive method).

der the IIED claim, I disagree with the court's conclusion that no prejudice resulted from dismissal of the IIED claim. I would therefore reverse the superior court's dismissal of Jones's IIED claim and remand the case for a new trial on that claim.

## I. The Superior Court Erred in Dismissing Jones's IIED Claim on Summary Judgment.

Although the trial court should make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim of IIED,[1] Jones raised genuine issues of material fact as to both the outrageous nature of Ainsworth's conduct and the probability that he suffered severe emotional distress. He accomplished this by presenting to the superior court the following evidence in his opposition to summary judgment:

(1) A copy of Ainsworth's termination memo, which contains racial and sexual slurs;[2]

(2) Jones's deposition testimony that about a month after they started working together in the barbershop, Ainsworth intentionally "mess[ed] with [Jones] ... to make it hard for [Jones] to try to keep that job";

(3) Jones's deposition testimony that Ainsworth threatened him with a broomstick, brandishing the handle when Ainsworth was alone with Jones in the barbershop and threatening to do bodily harm to Jones with the stick;

(4) Jones's deposition testimony that after receiving the August 4 memorandum, Jones was in "fea[r] all the time because [he] didn't know what the next step was going to be because [Ainsworth] was still there" and that he felt fearful "every time [he] hear[d] the doors open or the keys ... because [he] never kn[ew] what [was] going to happen";

(5) Jones's deposition testimony that he was labeled a "rat" by correctional staff in retaliation for causing trouble for Ainsworth about the memo;

(6) An affidavit and expert report of Ernest C. Weber, a corrections and prison consultant with over thirty years of experience in the field, explaining the significance of the context of Ainsworth's conduct, the dependence of prisoners on staff for their safety and well being, and the "importance of minor things that are so simple to us who are free [that] become greatly magnified to those who are incarcerated";

(7) Weber's opinion that "[i]f staff indicate that they are 'out to get them' [prisoners] can then develop an extreme fear for their safety";

(8) Weber's opinion that if a prisoner contemplates reporting inappropriate guard conduct, he must consider the possibility of being labeled a "rat." Weber added: "I cannot overstate the seriousness of an inmate being labeled a 'rat' in an institutional correction environment. This label could and often does place the individual in very real danger during incarceration."

(9) Weber's opinion that the racial and sexual harassment that Jones was subjected to "could have caused him severe mental anguish and could have placed him in a position to be subject to serious physical harm."

Although the court's opinion does not reach the question, the concurrence concludes that Jones presented insufficient evidence of severe distress to avoid summary judgment on his IIED claim, basing this view on Jones's purported failure to present evidence regarding the effect of Ainsworth's actions on him.[3] But on a summary judgment motion, "[t]he non-moving party is entitled to have the record reviewed in the light most favorable to it and to have all reasonable inferences drawn in its favor."[4] And as

---

1. *Richardson v. Fairbanks N. Star Borough*, 705 P.2d 454, 456 (Alaska 1985); *see also Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582 (Alaska 2001) (holding failure of the trial court to make threshold decision about outrageousness of conduct required remand of IIED claim for that determination).

2. We have previously held that "an isolated incident ... may ... be sufficiently egregious to satisfy the outrageousness threshold." *Lybrand v. Trask*, 31 P.3d 801, 805 n. 8 (Alaska 2001).

3. Concurring Op. at 352 n. 9.

4. *Holland v. Union Co. of California*, 993 P.2d 1026, 1029 (Alaska 1999).

the concurring opinion recognizes, Jones testified that he "feared all the time because I didn't know what the next step was going to be because [Ainsworth] was still there. I didn't know if ... every time I hear the doors open or keys, it still bugs me, it bugs me today ... because I never. know what is going to happen."[5] Jones also described in detail Ainsworth's systematic harassment and discrimination. Ainsworth's described conduct was so extreme and outrageous that standing alone it permits an inference of distress. A number of federal decisions have recognized that inferences of emotional distress may be drawn from conduct in the context of discrimination claims.[6] As the Seventh Circuit explained: "The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional distress."[7] The *Balistrieri* court went on to conclude that even though the testimony offered "was somewhat general and conclusory" and even "minimal," it was sufficient to support an emotional distress award.[8]

Similarly, the Ninth Circuit concluded that it was proper to award damages for humiliation and distress to a husband and wife who suffered discrimination in their search for rental office space, where there was no testimony from the husband about his emotional distress.[9] That court concluded that the husband's "humiliation could be inferred from the surrounding circumstances" of not being able to rent office space because he was African–American.[10] And in *Hobson v. Brennan*, the court relied on decisions of the D.C. Circuit to conclude that an absence of direct testimony about distress will not defeat a claim for compensatory damages.[11] The court in *Hobson* explained that "[t]he defendants' construction of the term 'testimony' ... is overly narrow [because it] overlook[s] the [D.C. Circuit] Court of Appeals' further statement that 'in appropriate circumstances ... emotional distress may be inferred from the circumstances.'"[12] The *Hobson* court reasoned that in a case involving an intrusive investigation by the FBI "[t]estimony about something so obvious [as the plaintiff's emotional distress] would have been redundant and possibly viewed by the jury as so self-serving as to be counter pro-

5. Concurring Op. at 352.

6. *See, e.g., United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993) (inference of distress permissible in housing discrimination case); *Sec'y, U.S. Dep't of Housing & Urban Dev. ex rel. Herron v. Blackwell*, 908 F.2d 864, 872–73 (11th Cir.1990) (damages from emotional distress may be inferred from circumstances as well as proved by testimony); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552–53 (9th Cir.1980) (same); *see also Hobson v. Wilson*, 737 F.2d 1, 61–62 & n. 173 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), *overruled in part on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (identifying emotional distress as an interest protected by common law tort rules, and declining "to hold that some quantum of compensable emotional distress may not be inferred from the circumstances" and remanding the issue for consideration by a jury of whether the conduct justified such distress where the conduct included violations of the First Amendment); *Doe v. District of Columbia*, 697 F.2d 1115, 1124 n. 24 (D.C.Cir.1983) (observing that under certain cir-

cumstances infliction of emotional distress may be inferred from the circumstances of the violation, particularly in the context of substantive rights such as the Eighth Amendment, even though such inferences may not be permissible in the procedural due process context as the United States Supreme Court held in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)).

7. *Balistrieri*, 981 F.2d at 932.

8. *Id.* at 933.

9. *Phiffer*, 648 F.2d at 552–53.

10. *Id.* at 550, 553; *see also Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir.1991) (citing *Phiffer* for proposition that "damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances").

11. 646 F.Supp. 884, 890 (D.D.C.1986) (quoting *Hobson v. Wilson*, 737 F.2d at 61 n. 173 (citing *Doe*, 697 F.2d at 1124 n. 24)).

12. *Hobson v. Brennan*, 646 F.Supp. at 890.

ductive."[13]

Moreover, the Seventh Circuit has recognized that "racial discrimination, 'which is one of the relics of slavery' is the type of action that one could reasonably expect to humiliate or cause emotional distress to a person."[14] No reasonable person could be expected to endure the degrading racial and sexual slurs and routine threats allegedly made by Ainsworth without suffering severe emotional distress. And "[t]he jury is in the best position to evaluate both the humiliation inherent in the circumstances and the witness's explanation of his injury.... [A] jury may glean as much if not more about a witness's emotional state from the witness's demeanor than from his attempts to explain the nature of his injury in words."[15]

Although the concurrence places great reliance on the Seventh Circuit's decision in *Alston v. King*,[16] Alston's emotional distress claim arose from a municipal employer's failure to provide him with the pretermination hearing required by his employment contract.[17] In my view, the conduct underlying Jones's claims of emotional distress—degrading racial and sexual slurs and continuing threats made by a jail guard to a prisoner under his control—is significantly more serious than the conduct underlying Alston's claims, where Alston was "taken back to his desk and forced to clean out his desk in the presence of his coworkers, without any explanation," while some coworkers cried and others laughed and mocked him.[18] Yet, in *Alston*, the court found that despite scant evidence of emotional distress, testimony about the "sequence of events at the office" was "sufficient to raise a jury issue of emotional distress damages related to the denial of procedural due process."[19] The court concluded: "In other words, there was enough evidence [from which] to infer that the humiliation [Alston] experienced was attributable to the summary nature of the proceedings, rather than to the termination itself. Alston therefore presented sufficient evidence of damages to withstand judgment as a matter of law."[20]

Thus, in certain cases, severe emotional distress may be inferred from the circumstances underlying the plaintiff's claim. The outrageousness of Ainsworth's discriminatory and threatening conduct permits such an inference of severe emotional distress and raises a genuine issue of material fact. It is thus my view that the evidence submitted by Jones on the issues of outrageousness and severe emotional distress was sufficient to survive the State's motion for summary judgment.

## II. The Erroneous Dismissal of the IIED Claim Was Not Harmless Error.

"Under the harmless error test, '[t]he members of this court must necessarily put themselves, as nearly as possible, in the posi-

---

13. *Id.*

14. *See Balistrieri*, 981 F.2d at 932 (quoting *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636 (7th Cir.1974) (upholding a damages award based on "racial indignity" where the only direct evidence of emotional distress was testimony that "I was humiliated. I was intimidated, not only as a person but as a man. He stripped me of my right as a father to my kids")); *see also Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 836 (8th Cir. 2001) (explaining that "a plaintiff's own testimony may provide ample evidence when heard in combination with the circumstances surrounding the plaintiff's termination" where the plaintiff was terminated because of his disability); *Krueger v. Cuomo*, 115 F.3d 487, 492 (7th Cir.1997) (noting that "[i]t demands little in the way of either empathy or imagination to appreciate the predicament of a woman who is harassed in full view of her children ...." and concluding that an inference of distress is permitted with minimal direct evidence apart from her testimony).

15. *Balistrieri*, 981 F.2d at 933; *see also Wahi v. N. Trust Corp.*, 2002 WL 31133205, at *7 (N.D.Ill. 2002) (testimony alone is sufficient to support an award of damages); *Kronstedt v. Equifax*, 2001 WL 34124783, at *13 (W.D.Wis.2001) (concluding that evaluation of emotional distress claim stemming from release of inaccurate and derogatory credit information on credit report is best left to the jury); *Pumphrey v. Stephen Homes, Inc.*, 1994 WL 150947, at *7 (D.Md.1994) (testimony alone sufficient to support award).

16. 231 F.3d 383 (7th Cir.2000).

17. 231 F.3d at 386–87.

18. *Id.* at 389.

19. *Id.* at 389.

20. *Id.*

tion of the jury in order to determine whether, as reasonable [people], the error committed probably affected their verdict.' " [21] If the jury had been permitted to consider Jones's IIED claim, it could have weighed the nature and extent of harassment that Jones suffered throughout his period of employment under Ainsworth, rather than just the distress suffered from the time of termination. And if the IIED claim had remained, the jury could have compensated Jones for the emotional distress he suffered due to threatening behavior by a correctional officer who had power over him, in addition to the emotional distress associated with being terminated. Thus, dismissal of this claim cannot be viewed as harmless error.

The superior court limited the recovery of emotional distress damages to those resulting from Jones's termination based on racial or sexual discrimination, in violation of the Human Rights Act. Before closing arguments, the superior court gave preliminary instructions, including an instruction that told the jury that it could award Jones damages to compensate him only for emotional distress caused by racially motivated termination: "If you find that Mr. Jones's rights under the Alaska Human Rights Act were violated, you may award him a fair amount to compensate for emotional distress caused by that injury." The court defined the Human Rights Act violation as termination motivated by racial or sexual discrimination. Thus, the jury's award of non-economic damages was to compensate Jones only for the emotional distress he suffered due to his termination for discriminatory reasons.

But Jones also testified that he interpreted Ainsworth's memo as a threat and that it caused him to be afraid. And Jones's corrections expert confirmed that mere receipt of such a memo would have had "a profound effect on the individual who was incarcerated," due to the extraordinary authority that correctional employees have over inmates. Moreover, Jones claimed that Ainsworth's memo was just the culmination of an abusive relationship. Jones testified that Ainsworth

had made earlier comments that frightened him, and he described an incident during which Ainsworth made an unprovoked threat to hit Jones with a broom handle and actually picked up the broom as if to carry out the threat.

Because of the court's earlier dismissal of the IIED claim, the State was successful in its argument to limit emotional distress damages to those resulting from the termination via the memo. And the State convinced the court to give Instruction 14.5, which stated that "Mr. Jones is not entitled to emotional damages that he is claiming occurred before he received the memorandum from Floyd Ainsworth dated August 4, 1997." Because the jury was expressly prevented from compensating Jones for his distress resulting from Ainsworth's course of conduct before the termination, the court's assertion that Instruction No. 14.5 did not preclude the jury's consideration of Ainsworth's earlier course of conduct in making its emotional distress award is inaccurate. [22]

I also believe that the court is incorrect in concluding that Jones inadequately preserved in the trial court his claim to emotional distress damages for Ainsworth's pre-termination conduct by failing to object to instructions that limited the scope of his claims or failing to argue the point in his opposition to summary judgment and at trial. Jones's counsel objected at trial to the State's argument for an instruction that would limit Jones's emotional distress damages to those suffered after Jones received the memo:

MR. MOGEL: Your Honor, I believe I'm entitled to an instruction that Mr. Jones is not entitled to any economic damages for the time before he received the memorandum.

MR. VERMONT: No, emotional distress.

MR. MOGEL: No[ ] emotional distress damages for the time before he received the memorandum. The claim in this case is that he was terminated and any distress,

**21.** *Dobos v. Ingersoll,* 9 P.3d 1020, 1024 (Alaska 2000) (quoting *Alyeska Pipeline Serv. Co. v. O'Kelley,* 645 P.2d 767, 773 (Alaska 1982)).

**22.** Slip Op. at 350, n. 20.

any emotional distress would have to stem from that termination.

THE COURT: Mr. Wendt?

MR. WENDT: I disagree. It's true he was terminated and the termination according to the complaint happened once. But, Your Honor, the termination is the culmination of what had occurred for months before that. And as such, the activity before termination is part of the termination.... This is the actions of Floyd Ainsworth who was his supervisor who terminated him and the actions occurred before the termination and after the termination, and emotional distress Mr. Jones suffered as a result of Floyd Ainsworth's actions was culminated on August the 4th. *I don't feel the need to be limited to the date of culmination of those actions when the actions took place over a period of time.* (Emphasis added.)

Before finalizing its jury instructions, the superior court ruled against Jones on this point, concluding that

> the damages have to stem from the act itself that forms the underlying basis of the complaint. And the underlying basis of the complaint, the cause of action, is the termination and the damages would come after that, not preceding it.

When the trial court clarified that its ruling was based on its assumption that the Human Rights Act termination claim only allowed damages from the date of termination, Jones's counsel responded "I do object to that."

Later, when the superior court decided on the specific language of the instruction that would implement its ruling, Instruction 14.5, Jones objected to it for "the previous reasons stated," referring to his earlier argument regarding the State's request for an instruction limiting the damages to those resulting from the termination. The superior court ruled that it would give Instruction 14.5, "subject to the underlying objection," referring to Jones's earlier argument that his emotional distress damages should not be limited to those arising after receipt of the memo.

Each time the subject of this limitation of damages arose, Jones's counsel was clear in his objection, and the trial court understood his continuing and "underlying objection" to the limitation on damages. At the time that the trial court decided to give Instruction No. 9 and the other preliminary instructions generally describing the claims to the jury, the State had not yet made its request to limit emotional distress damages. Certainly, there was ample opportunity for the trial court to correct the final instructions that were given to the jury after closing arguments. Instead, Instruction 14.5 was inserted over Jones's objection. Thus, it seems unfair for the court to conclude that Jones failed to preserve properly his argument that he was entitled to emotional distress damages beyond those related to the termination memo.

Moreover, as Jones explains in his reply brief on appeal, had he "been permitted to pursue his IIED claim he would have been able to present more evidence ... at trial as well as argu[e] more forcefully to the jury." Jones was not required in his opposition to summary judgment on the IIED claim to develop fully the basis for his claim for damages arising from Ainsworth's alleged intentional infliction of emotional distress; he was only required to raise a genuine issue of material fact. And once the IIED claim was dismissed at the summary judgment stage, Jones likely felt constrained in his ability to present evidence outside the scope of the termination incident. As the court recognizes, the remaining Human Rights Act claim restricted Jones to evidence and argument on damages that directly and naturally resulted from the injury in question—his termination.[23] Thus, once the IIED claim was dismissed from the case, Jones was required to alter the structure and presentation of his case in order to conform to that ruling. It thus hardly seems right to fault Jones for focusing his presentation in the trial court on the emotional distress damages he suffered

---

**23.** Slip Op. at 349; *see Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 915 (Alaska 1991).

as a result of the August 4 termination memo.

Because I believe that the superior court erred in granting summary judgment on the IIED claim, and because Jones testified that he suffered emotional distress independent of that resulting from the racially motivated termination, I am unable to agree that the error in dismissing the IIED claim was harmless. I would reverse and remand for a new trial on the IIED claim. I therefore respectfully dissent.